IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH L. TIEMAN, et. al.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 06-CV-1036 |
| | : | |
| v. | : | |
| | : | **JUDGE MARBLEY** |
| **VICTAULIC COMPANY,** | : | |
| | : | Magistrate Judge King |
| Defendant. | | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This action is before the Court on Defendant's Motion to Dismiss pursuant to 28 U.S.C. §1406(a) and Fed. R. Civ. Pro. 12(b)(3) or, in the alternative to Transfer Venue to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1406(a) or 28 U.S.C. §1404(a).  For the reasons set forth herein, the Court, without commenting on Defendant's Motion to Dismiss or the propriety of the venue of this action under 28 U.S.C. §1391, **GRANTS** Defendant's Motion to Transfer Venue to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1404(a).

**II. FACTUAL and PROCEDURAL BACKGROUND**

Plaintiff Joseph L. Tieman ("Plaintiff" or "Tieman"), a lifelong resident of Ohio, began his employment at the Victaulic Company ("Defendant" or "Victaulic") in April 1998.  Victaulic is a manufacturer of parts used in fire protection systems and is incorporated under the laws of New Jersey with its principal place of business in Pennsylvania.  Tieman worked as a sales

1

representative for Victaulic. Victaulic assigned him to a sales territory that covered Ohio, West Virginia, and parts of western Pennsylvania (the "Victaulic Sales Territory").

On or about October 22, 2005, Tieman executed a Non-Competition Agreement which is at the center of this lawsuit. (the "Non-Compete") In exchange for an increase in salary, the Non-Compete prohibited Tieman from working in a similar capacity for anyone anywhere in North America aside from Victaulic for twelve months after his termination.

More pertinently, the Non-Compete contained a choice of law provision and a forum-selection clause. In relevant part, the Non-Compete stated:

> It is understood that this Agreement is made under and shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. All disputes which arise in connection with, or are related to this Agreement or any claimed breach thereof, shall be resolved, if not sooner settled, by litigation only in Northampton County, Commonwealth of Pennsylvania (or the Federal Court otherwise having territorial jurisdiction over such County and subject matter jurisdiction over the dispute), and not elsewhere, subject only to the authority of the court in question to order changes in venue. I waive any rights I may have to litigate in any venue other than the above court, and covenant not to sue the company in court other than the above courts with respect to any dispute related to this Agreement.

On December 11, 2006, Tieman resigned from Victaulic and commenced employment at Plaintiff Tyco Fire Products LP ("Tyco," collectively with Tieman, "Plaintiffs"). Tyco is a competitor of Victaulic and is incorporated in Delaware with its principal place of business in Texas. Tyco assigned Tieman to a sales territory that encompasses Indiana, Wisconsin, Illinois, Minnesota, Iowa, North Dakota, South Dakota, and Kentucky. (the "Tyco Sales Territory").

Also on December 11, 2006, Tieman and Tyco filed this action. In their complaint, Plaintiffs seek declarations that portions of the Non-Compete are overly broad and unenforceable and that Tieman's employment by Tyco does not give rise to any cognizable claim by Victaulic against Tyco.

On December 22, 2006, Victaulic filed suit against Tieman and Tyco in the United States District Court for the Eastern District of Pennsylvania, *Victaulic v. Tieman et. al*, Case No. 06CV5601 (the "Pennsylvania Action"). In the Pennsylvania Action, Victaulic states claims against Tieman and Tyco for breach of contract, violations of Pennsylvania's Trade Secrets Act, tortious interference with contract, and unfair competition.

Victaulic subsequently filed this Motion to Dismiss or Transfer Venue, seeking to have this action dismissed or consolidated with the Pennsylvania Action. Plainitiffs filed a timely response and Victaulic replied. This matter is now ripe for adjudication.

### III. STANDARD OF REVIEW

Defendant's Motion to transfer is brought pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1]

In ruling on a Section 1404(a) motion, the Court need not limit itself to the three statutory factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.1995).

---

[1] In the briefs, the Parties do not contend that this action could not be brought in the United States District Court for the Eastern District of Pennsylvania.

Rather, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879 citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters at §3847 (2d ed. 1986).

While there are no set factors that the Court must examine, courts have generally examined a host of private and public factors protected by the language of Section 1404(a). *Id.* "The private interests have included: plaintiff's forum preference as manifested in the original choice, 1A Pt. 2 Moore's ¶ 0.345[5], at 4363; the defendant's preference, 15 Wright, Miller & Cooper § 3848, at 385; whether the claim arose elsewhere, id. § 3848; the convenience of the parties as indicated by their relative physical and financial condition, id. § 3849, at 408; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, id. § 3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), id. § 3853." *Jumara*, 55 F.3d at 879.

"The public interests have included: the enforceability of the judgment, 1A Pt. 2 Moore's ¶ 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, id.; the relative administrative difficulty in the two fora resulting from court congestion, id., at 4373; 15 Wright, Miller & Cooper § 3854; the local interest in deciding local controversies at home, 1A Pt. 2 Moore's ¶ 0.345[5], at 4374; the public policies of the fora, see 15 Wright, Miller & Cooper § 3854; and the

familiarity of the trial judge with the applicable state law in diversity cases, id." *Jumara*, 55 F.3d at 879-80.

## IV. LAW and ANALYSIS

In requesting that this Court transfer this case to the Eastern District of Pennsylvania, Defendant relies heavily upon the forum-selection clause in the Non-Compete. Federal law governs a venue dispute based largely on a forum-selection clause. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28. Forum-selection clauses are *prima facie* valid absent a showing that they are unreasonable, unjust, or invalid for such reasons as fraud or overreaching. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991). Plainitffs do not argue that the forum-selection clause is unreasonable nor do they assert that it was obtained through fraud. Rather, they contend that the forum-selection clause may only constitute a small part of this Court's Section 1404(a) analysis.

A forum-selection clause should not receive dispositive weight, but is entitled to substantial consideration in a Section 1404(a) balancing test. *Jumara*, 55 F.3d at 880; *Stewart*, 487 U.S. at 29. The Court is required to "engage in a case-specific balancing pursuant to the standards laid out in 28 U.S.C. § 1404(a) to determine whether to give the [forum-section] clause effect by transferring the case to another district court embracing the contractually specified forum." *Jumara*, 55 F.3d at 878. While courts normally defer to a plaintiff's choice of forum, when a valid forum-selection clause exists, the burden shifts to the plaintiff to demonstrate why he should not be bound by his contractual

choice of forum. *Id.* at 880; *see also Detroit Coke v. NKK Chemical USA, Inc.*, 794 F.Supp. 214, 220 (E.D. Mich. 1992) ("when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute") (citations omitted).

Plaintiffs also argue that Tyco was not a party to the Non-Compete and its forum-selection clause, and as such, Tyco should not bound by it. Defendant retorts that Tyco is in privity with Tieman, who is a party to the Non-Compete, and therefore Tyco should also be subject to its requirements. Tyco is a co-plainitiff in this action. It has elected to stand beside Tieman: Tyco seeks identical declarations as Tieman, shares the same counsel as Tieman, and Tyco's claims in this case can only be adjudicated vis-a-vie Tieman's respective rights and obligations under the Non-Compete. Because Tieman and Tyco's rights are inextricable woven together, Defendant asserts that if this Court chooses to enforce the forum-selection clause after employing a Section 1404(a) analysis, it should transfer all the claims in this case and not just Tieman's claims.

In support of this assertion, Defendant relies on *Nemo Associates, Inc. v. Homeowners' Marketing Services International, Inc.*, 942 F. Supp. 1025 (E.D. Pa. 1996). In *Nemo*, a corporate franchisee and its principals sued a franchisor for alleged breach of contract and sought to invalidate certain restrictive covenants in the franchise agreement. Defendant franchisor sought to have the case transferred to the venue proscribed by the forum-selection clause in the franchise agreement. *Id.* at 1027. Plainitffs argued that since only the franchisee and not its two principals, who were also plainitiffs in the suit,

was a party to the franchise agreement, the forum-selection clause should not bind the principals. *Id.* The court held that even if the principals were not bound by the forum-selection clause, the Section 1404(a) balancing test militated in favor of transferring the case. *Id.* at 1029.

In reaching this decision, the court noted that the factual allegations underlying each plaintiff's claims were closely related and that it would be a "waste of judicial resources to allow the [individual plaintiffs'] claims to remain in this court while" transferring the franchisee's claims. *Id.*

Finding *Nemo* persuasive, this Court agrees with its analysis. If the Section 1404(a) balancing test weighs in favor of transferring Tieman's claims, given that he is the primary plaintiff, it would be a waste of judicial resources not to transfer the entire case, even assuming *arguendo* that Tyco is not be bound by the Non-Compete. In order to determine whether the Section 1404(a) balancing favors transferring this case to the United States District Court for the Eastern District of Pennsylvania, the Court will examine the private and public factors delineated above.

Plaintiffs rely on *Manuel v. Conergys Corp.* 430 F.3d 1132 (11th Cir. 2005) to support their contention that this Court should find that the "first to file rule" trumps the Non-Compete's forum-selection clause. Plainitiffs' contention is without merit for three reasons. First, the court in *Manuel* did not employ a Section 1404(a) analysis. Rather, the court discussed the propriety of hearing a declaratory judgment action and, in doing so, did not centrally focus on the existence of a forum-selction clause in the employment contract in question. *Id.* at 1132. Second, the forum-selection clause in *Manuel* was

permissive rather than exclusive as it is in this case. *Id. at 1134.* Third, giving great weight to the fact that Tieman was first to file would encourage forum-shopping. Tieman filed this declaratory judgment action the same day he resigned from Victaulic and assumed employment at Tyco. In doing so, he did not give Victualic the opportunity to be the first to file. Had Victualic known that Tieman planned to breach the Non-Compete in advance of the start of this litigation, it is likely that Victualic would have brought suit to enforce it in the Eastern District of Pennsylvania.

The first private factor the Court must consider under Section 1404(a) is the Parties' choices of forum. Clearly, Victaulic wants this case to be litigated in the Eastern District of Pennsylvania and Tyco wants this Court to retain jurisdiction. While Tieman may argue that his preferred forum is the Southern District of Ohio, that was not his original preference of forum; a "forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. To that extent, Tieman's first preference of forum was the Eastern District of Pennsylvania. Given the conflicting preference of forums, this first private factor does not tip in favor of either Plaintiffs or Defendant.

The second private factor that the Court must examine is where the claim arose. Defendant contends that the claim arose in the Tyco Sales Territory, outside the state of Ohio. Defendant claims that Tieman breached the Non-Compete when he began his employment at Tyco. By Plaintiffs' own admissions, Tieman will not be working in the state of Ohio, but rather in eight surrounding states. Plaintiffs retort that the claims arose in the Victaulic Sales Territory which includes Ohio, where Tieman conducted 75% of

his sales activites for Victualic. Planitiffs further note that the crux of Victaulic's complaint in the Pennsylvania Action is that, while residing in Ohio, Tieman unlawfully accepted employment from Tyco.

Plaintiff's second contention lacks merit. Victaulic's complaint is not at issue in this case. Only Tyco's and Tieman's claims for declaratory judgment are before this Court. Any claims that Victualic may have in regard to the Non-Compete have been filed in the Pennsylvania Action over which this Court does not have jurisdiction. Plaintiffs do not seek declaratory judgment that Tieman's actions did not violate the Non-Compete. Rather, Plaintiffs seek a judgment that various portions of the Non-Compete are overbroad and unenforceable.[2] If Plaintiffs' contentions are true, these portions would have been void *ab initio*. Either the Non-Compete was unenforceable as written or it was not. Thus, Tieman's actions after the contract was executed are irrelevant. Therefore, this claim arose where the contract was negotiated. *See, generally, Hutton v. Priddy's Auction Galleries, Inc.*, 275 F.Supp.2d 428, 441 (S.D.N.Y. 2003.) Neither side provides this Court with information as to where the contract was executed; however, given that Tieman is an Ohio resident who worked for Victaulic in Ohio, the Court will assume that the contract was negotiated, at least from Tieman's point of view, in Ohio. To the extent that this Court should also consider a possible counterclaim from Victaulic

---

[2]Plaintiffs' first three claims specifically request that this Court find that portions of the Non-Compete were "overly broad and unenforceable." Their fourth claim requests a declaration from this Court that Tieman's and Tyco's actions did not give rise to any cognizable claim by Victaulic against Tyco because Tieman's new sales territory did not overlap with his Victaulic sales territory. The Non-Compete, however, specifically proscribes Tieman from engaging in certain activities "anywhere in the United States, Canada, or Mexico." Thus, Plaintiffs' fourth claim is simply another request to declare this portion of the Non-Compete unenforceable.

or a consolidation with the Pennsylvania Action, this Court finds that it is irrelevant whether these claims arose in the Victaulic Sales Territory or the Tyco Sales Territory, because neither encompasses the Eastern District of Pennsylvania. Thus, the second factor weighs in favor of this Court retaining jurisdiction.

The third private factor that this Court must examine is the convenience of the Parties. As a resident of Ohio, this Court would be more convenient for Tieman. Although, as a salesman for Tyco in eight states, he is obviously accustomed to traveling. On the contrary, Victaulic has a strong interest, as evidenced by the inclusion of a forum-selection clause in its employment contracts, in litigating this case in Pennsylvania. It wants to ensure that its contracts are uniformly governed by Pennsylvania law and that it can better estimate the costs of ligation. These goals have been favorably recognized by the court. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991) (holding that a corporation which placed a forum-selection clause in form contracts had a special interest in limiting the fora in which it may be sued and that this forum-selection clause "had the salutary effect of dispelling confusion as to where suits may be brought and defended, thereby sparing litigants time and expense and conserving judicial resources"). Moreover, Victaulic's principal place of business is in the Eastern District of Pennsylvania. Most, if not all, of the witnesses Victaulic says that it intends to call regarding the execution of the Non-Compete are located in the Eastern District of Pennsylvania.

Thus, the Eastern District of Pennsylvania is the most convenient forum for Victaulic. Tyco admits that it does business in most states and does not appear to assert

that Ohio is substantially more convenient venue that Pennsylvania. In fact, Tyco has a corporate location within forty miles of the federal court in the Eastern District of Pennsylvania and has been previously involved in litigation in that court with Victaulic over a similar non-compete agreement. On the whole, the third factor weighs in favor of transferring this action to the Eastern District of Pennsylvania.

      The fourth factor is the convenience of any third-part witnesses to this action. Plaintiffs do not assert that they intend to elicit the testimony of third-party witnesses in this action. Rather, they contend that Victaulic will need the testimony of third-party witnesses, namely customers of Victaulic and Tieman, to prove its claims of breach of contract, tortious interference with contract, violation of trade secrets laws, loss of goodwill, and harm to existing customer relationships. Plaintiffs further contend that 75% of Tieman's customers during his employ at Victaulic are located in Ohio, and as such, this factor militates in favor of this Court retaining jurisdiction. Victaulic retorts that it does not intend to call <u>any</u> third-party witnesses. It contends that its primary witnesses, whether in defense of this action or in prosecution of the Pennsylvania action, will consist of management personal located at its headquarters in Pennsylvania. Victaulic further states that if Tiemans's representations to this Court that he will not be contacting, servicing, or soliciting any Victaulic customers in Ohio are true, then Victaulic would not have a need to call any Ohio customers to testify. Moreover, as the Court discussed above, the only claims pending before this Court are Plaintiffs' declaratory judgment claims regarding the enforceablity of certain portions of the Non-Compete. As such, it is unlikely that any customers need be called as witnesses. Even if

11

this Court were to take into account possible counterclaims or those claims stated in the Pennsylvania Actions, the fourth factor weighs in favor of transfer.

The last private factor is the location of any business records that may be introduced at trial. Given the various Parties' differing locations, and the sweeping sales territory that Tieman formerly covered and currently covers, relevant business records are likely scattered across various locations. As such, this factor does not favor either retaining or transferring this case.

The first public factor the Court must consider is the enforceability of the judgment. The judgment will be equally enforceable if it is rendered in either forum. The second public factor is whether any practical considerations exist that would make the trial more efficient in one particular forum more than the other. While Tieman does reside in Ohio, given that both Victaulic and Tyco have offices close to the federal court in the Eastern District of Pennsylvania and that Victaulic contends that almost all its witnesses will come from that location, it would be marginally more efficient to hold the trial there.

The third public factor is the relative administrative difficulty in the two fora resulting from court congestion. Plaintiffs remark that federal case management statistics indicate that the Southern District of Ohio has 2,962 cases pending whereas the Eastern District of Pennsylvania has 9,367 cases pending. This statistic has little significance viewed in the abstract. Plainitffs fail to provide other essential information such as the number of judges each court has, the number of senior judges, and the number of cases per judge. It is quite feasible that although this Court has substantially less cases than the

Eastern District of Pennsylvania, there are actually more cases per judge in this locale. If this Court retains jurisdiction, the Pennsylvania Action does not disappear. Victaulic would still be able to pursue its claims in Pennsylvania absent that court dismissing the action or transferring it. Thus, this factor balances in favor of transferring this case. *See, Subaru of New England, Inc. v. Subaru of Augusta, Inc.*, 121 F.R.D. 1, 3 (D.Mass. 1988) (holding that a court may transfer a declaratory judgment action to a another court where the same issues are pending "to avoid duplicitous litigation, even if the convenience of the parties and witnesses are in balance as between the two districts").

      The fourth public factor is the local interest in deciding local controversies at home. While Victaulic and Tyco are both national corporations, Tieman is a lifelong resident of Ohio. As such, this factor favors this Court retaining jurisdiction. The fifth factor, the public policies of the two fora do not impact the transferring decision as neither Plaintiffs nor Defendant cites a compelling public policy that would weigh for or against transferring this action.

      The last public factor is the familiarity of the court with the applicable state law. As noted above, the Non-Compete has a choice of law provision that dictates that Pennsylvania state law governs its construction. The United States District Court for the Eastern District of Pennsylvania will have more familiarity with Pennsylvania state law than this Court. Plaintiffs, however, make two arguments as to why this fact should not matter. First, they contend that Pennsylvania and Ohio law with regard to the reasonableness of covenants not to compete are essentially the same. This argument lacks merit. A significant factor, namely which party bears the burden of proving proof

13

in regards to the enforceability of covenants not to compete in employment contracts, differs under Ohio and Pennsylvania law. Under Ohio law, the party seeking to enforce the non-competition agreement bears the burden of proof. *See, e.g., Evans v. Duracote Corp.*, 13 Ohio App.2d 63, 65-6 (7th Dist. 1968). Under Pennsylvania law, the party challenging it has the burden of proof. *See, e.g., John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 12 (1977). Moreover, the similarity of the laws is irrelevant. Pennsylvania law will still be utilized regardless of its similarity to Ohio law, and a court sitting in Pennsylvania will be more familiar with it. Second, Plainitffs argue that Ohio law is likely to be controlling in regards to Victaulic's tort claims against Tyco. This argument is likewise without merit. Only the declaratory judgment claims are before this Court. Those claims are likely to be governed by Pennsylvania law. Thus, the last public factor weighs in favor of transferring this action to the Eastern District of Pennsylvania.

On the whole, the Section 1404(a) balancing factors do not overwhelmingly favor this Court either retaining jurisdiction or transferring this case to the United States District Court for the Eastern District of Pennsylvania. As such, the Court finds that Plaintiffs have failed to satisfy their burden of proving that the Eastern District of Pennsylvania is so inconvenient that they should not be bound by their contractual choice of forum. Thus, this Court, like the court in *Subaru*, chooses to transfer this declaratory judgment action to the United States District Court for the Eastern District of Pennsylvania in the interests of justice and in order to avoid having duplicative cases on the docket.

## VI. CONCLUSION

For the reasons stated herein, Defendant's Motion to Transfer Venue to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1404(a) is **GRANTED**.

The Clerk shall transfer this case to the United States District Court for the Eastern District of Pennsylvania and mark it as CLOSED on this docket.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: January 31, 2007**